**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ELDER HIGH SCHOOL, | : | |
| | : | Case No. |
| Plaintiff, | : | |
| | : | Judge: |
| v. | : | |
| | : | |
| JAMES DOOGAN and JOSEPH DOOGAN, | : | **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND INJUNCTIVE RELIEF** |
| Defendants. | : | |
| | : | **JURY TRIAL DEMANDED** |

Plaintiff Elder High School ("Elder" or "Plaintiff") through its undersigned counsel, hereby states for its Complaint against Defendants James Doogan ("Jim") and Joseph Doogan ("Joe") (collectively, "Defendants") with personal knowledge as to Elder's actions and upon information and belief as to those of others, as follows:

## NATURE OF THE CLAIMS

1. Elder brings this action for (1) trademark infringement, (2) trade dress infringement, (3) unfair competition, (4) deceptive trade practices, and (5) injunctive relief against Defendants.

## THE PARTIES

2. Elder is a Catholic High School in Cincinnati, Ohio, that is an Ohio unincorporated nonprofit association organized and operating for educational and charitable purposes, recognized as tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

3. Upon information and belief, Jim is an individual residing at 1162 Balmoral Drive, Cincinnati, Ohio 45223-4801.

4. Upon information and belief, Joe is an individual residing at 7563 Zion Hill Road, Cincinnati, Ohio 45002.

## VENUE & JURISDICTION

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and § 1338 because this action concerns rights and liabilities under federal trademark and unfair competition act laws, including the Lanham Act, and related claims.

6. This Court has supplemental jurisdiction over Elder's state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim within the original jurisdiction of this Court that it forms part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside within this District, and also pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### Elder History

8. Elder is a Catholic college-preparatory high school in Price Hill on the West Side of Cincinnati that has been in operation since 1922, making it the oldest diocesan high school in Cincinnati.

9. Elder High School seeks to live up to its motto, "*Altiora*," meaning "the higher things" in its pursuit of academic, spiritual, and athletic excellence. (*See also* U.S. Registration

No. 2,965,693 (ALTIORA VINCIT FIDES MUNDUM) and U.S. Registration No. 7,897,428 (ELDER HIGH SCHOOL ALTIORA VINCIT FIDES MUNDUM VINCIT FIDES MUNDUM)).

10. Elder is well-known in the greater Cincinnati and Ohio communities and beyond for its academic excellence, offering high-quality faith-based education, having been consistently named to the list of the Cincinnati area's "Best Private High Schools" by Cincinnati Magazine.

11. Elder is also well-known in the greater Cincinnati and Ohio communities and beyond for its athletic excellence, its sports teams having won multiple OHSAA State Championships, including in Football in 2002 and 2003.

**THE PIT Mark**

12. Central to Elder's athletic renown is its unique football stadium, known in the greater Cincinnati community and far beyond as "The Pit."

13. The Pit is the cherished 10,000-seat stadium that hosts Elder's football games and other school events, and is widely regarded as one of the most unique, storied, and well-known high school football venues in the United States.

14. The Pit began construction in the 1930s and has hosted Elder football since at least the 1940's.

15. As early as 1941, students and the Elder High School student newspaper, *The Purple Quill*, were referring to the still under-construction stadium as "The Pit" an "the concrete Pit."

16. Because the phrase The Pit is well-known to relevant consumers in Ohio and beyond as signaling Elder as the source of goods and services offered in connection therewith, including, among other things, athletic events, spirit wear, and other items available in the Elder

bookstore, Elder has enforceable common law trademark rights to the phrase The Pit (the word mark The PIT and all enforceable rights thereto are hereinafter referred to as "The PIT Mark").

17. The PIT Mark is well-known to consumers in Ohio as identifying Elder as the source of goods and services, but its reach stretches beyond even the State of Ohio.

18. To wit, MaxPreps, the well-known nationwide platform known as a central hub for high school sports information in the United States, in 2014, listed Elder and the Pit as one of "10 high school football stadiums to see before you die" alongside other iconic venues throughout the nation. *See* https://www.maxpreps.com/news/2BVcrfP2E0-LJ9efx_TJ-A/10-high-school-football-stadiums-to-see-before-you-die.htm (last accessed Oct. 28, 2026).

19. This echoes a *USA Today* article from October 2001, which listed Elder and the PIT as one of 10 "great [nationwide] places to watch a high school football game" (see screenshot below).



20. Elder hosted a nationally televised football game on ESPN at the Pit on September 6, 2009, which featured Elder's football team playing against rival Colerain.

21. The PIT Mark is synonymous with Elder's goods and services, in Ohio and beyond, and relevant consumers understand The PIT Mark to indicate that Elder is the source of its goods and services.

**ELDER PANTHERS Registrations**

22. Elder also owns longstanding trademark registrations for the word mark ELDER PANTHERS as used in connection with "Educational services, namely, providing courses of instruction at the high school level; and entertainment in the nature of high school athletics, band and glee club performances" (International Class 041) and "all-purpose carrying bags" (International Class 018) and "shirts, t-shirts, polo shirts, dress shirts, sweatshirts, sweatpants, shorts, pullovers, jackets, caps, hats, socks, headbands, ties, vests, jerseys, infantwear, ponchos, sweaters, pants, scarves, waist belts; children's clothing, namely, shirts, sweatshirts, pants, and skirts" (International Class 025) (all common law and registration-related rights in the word mark ELDER PANTHERS are hereinafter referred to as the "ELDER PANTHERS Mark." (*See* U.S. Registration Nos. 2,902,927 and 4,991,284).

**Elder's Trade Dress**

23. In addition to its iconic The PIT Mark and the registered ELDER PANTHERS Mark, Elder has other enforceable trade dress that indicates Elder as the source of its goods and services.

24. Since Elder's founding, Purple and White have been its official school colors, signifying Elder as the source of its goods and services.

25. Indeed, Elder's *alma mater*, written in 1933, explicitly mentions Purple and White as denoting a strong connection with Elder, "We are loyal to thy colors, To the Purple and the White."

26. *The Purple Quill*, the well-known and longstanding Elder Student Newspaper, also references Elder's purple.

27. Elder's official mascot has been "The Panthers" since the inception of its athletic programs in the early part of the 20th Century (*see also* ELDER PANTHERS Registrations above), and Elder uses a stylized Panther logo ubiquitously on its school branding (reproduced below), including on athletic gear, fields, and spirt wear.



(The "Elder Panther").

28. In addition, Elder has enforceable trade dress rights in depictions of The Pit itself, because relevant consumers understand goods bearing such imagery to originate with Elder.

29. Elder has enforceable common law trade dress rights, by virtue of consumer understanding cultivated over the course of a century of continuous use that its goods and services arise with Elder, in the colors Purple and White, the Panthers as a mascot, stylized depictions of a Panther as exemplified above, and in imagery depicting The Pit itself (individually and collectively, these rights are hereinafter referred to as "The Elder Trade Dress").

**The Doogans' Willful Infringement**

30. In the Spring of 2026, Jim approached Elder about his desire to produce and sell merchandise bearing the phrase "Pit Happens."

31. On or about June 2, 2026, Elder and Jim had a meeting where Jim pitched a proposal to partner with Elder on merchandising.

32. On June 8, 2026 Elder informed Jim that Elder did not wish to move forward with a partnership, in part, because the Elder leadership determined that "Pit Happens" could be interpreted as a play on the common vulgar expression "Shit Happens."

33. On June 17, 2026, Elder again informed Jim that Elder, this time in even more stark terms, that it did not approve of the use of the phrase "Pit Happens," explaining:

> While we understand the intent and recognize the creativity of the concept, it sits very close to a phrase that can be interpreted in ways that don't align with those standards. Even where the intent is positive, we have to consider how it may be perceived more broadly across our full community, including students, families, and the Archdiocese.
>
> Just as importantly, from a trademark standpoint, we need to be consistent in how we permit use of Elder-related marks. Allowing uses in some instances but not others (particularly where similar issues are presented) makes it difficult for us to effectively protect and manage those marks over time. For that reason, we aren't in a position to approve or participate in this branding.
>
> We also need to be clear that, as the owner of these marks, Elder cannot permit their use in the marketplace without approval under

> our licensing and branding guidelines. To avoid confusion or unintended issues, we would ask that this concept not be pursued independently using Elder-related names, references, or associated branding.

34. In response, on June 22, 2026, Jim informed Elder that it had simply gone ahead and produced infringing merchandise in spite of the parties' previous communications, stating "For transparency, since that time, a 24-piece order was already placed prior to this clarification (primarily for friends and family). I want to be in good standing with Elder. I do not have plans to reorder."

35. That turned out to be inaccurate, because Jim and Joe have since admitted that they ordered at least 96 shirts and continued to distribute and sell them even after Elder made its position clear.

36. The design of the t-shirts Jim and Joe have produced and sold incorporate marks and trade dress confusingly similar to (1) The PIT Mark, (2) The ELDER PANTHERS Mark, (3) The Elder Trade Dress, and explicitly identifies the coordinates of the Pit as well as the neighborhood in which Elder sits (the t-shirt bearing the design depicted below is hereinafter the "Infringing Merchandise"). *See* image of the Infringing Merchandise reproduced below:







37. Furthermore, upon information and belief, Jim was observed selling the Infringing Merchandise at Elder on August 7, 2026 in the parking lot while tailgating before the Elder versus Lakota football scrimmage.

38. Upon information and belief, later in August of 2026, Jim was observed distributing tee-shirts at Overhill Swim Club and also approached one of the owners of Shop Charbon, a local women's specialty store, about providing the Infringing Merchandise.

39. Upon information and belief, Jim indicated he was doing this with Elder's approval and indicated that money made selling the Infringing Merchandise would go to the school, at least

because multiple members of the community have expressed to Elder the false belief that proceeds from sales of the Infringing Merchandise go to Elder.

40. Defendants also admitted to selling the Infringing Merchandise online.

41. In addition, on May 22, 2026 Jim applied for a federal registration of the word mark PIT HAPPENS on an intent to use basis, indicating that he intends to use the mark in connection with “Stickers” (Int’l Class No. 016), “Cups and mugs” (Int’l Class No. 021), “Athletic apparel, other than compression garments, namely, tee shirts, hoodies, caps, hats (clothing)” (Int’l Class No. 025), and “Marketing services” (Int’l Class No. 035). (*See* U.S. Serial No. 99,841,398).

42. Defendants’ conduct in continuing to produce, sell, and distribute the Infringing Merchandise evinces intent to deceive consumers, as does filing for a trademark registration that falsely implies a connection with Elder.

43. Defendants’ infringement of Elder’s intellectual property rights has been willful, at least since June 2026 when Elder made abundantly clear that it did not approve of Defendants’ use of marks and trade dress confusingly similar to Elder’s own, vulgar implications, and words and images that falsely suggest an affiliation with Elder.

44. The undersigned counsel has sent Defendants two cease and desist letters and has informed Defendants of Elder’s intent to initiate this action absent good faith cooperation.

45. Defendants responded by denying wrongdoing and have since indicated their intent to continue infringement by pursuing the infringing registration application for a PIT HAPPENS word mark.

**COUNT I**
**Federal Registered Trademark Infringement**
**(15 U.S.C. § 1114)**

46. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs.

47. Defendants' conduct as described herein constitutes registered trademark infringement.

48. Elder owns valid and enforceable trademark in the ELDER PANTHERS Mark.

49. Elder owns two incontestable federal registrations for the word mark ELDER PANTHERS, specifically to be used in connection with "Educational services, namely, providing courses of instruction at the high school level; and entertainment in the nature of high school athletics, band and glee club performances" (International Class 041) and "all-purpose carrying bags" (International Class 018) and "shirts, t-shirts, polo shirts, dress shirts, sweatshirts, sweatpants, shorts, pullovers, jackets, caps, hats, socks, headbands, ties, vests, jerseys, infantwear, ponchos, sweaters, pants, scarves, waist belts; children's clothing, namely, shirts, sweatshirts, pants, and skirts" (International Class 025) (*See* U.S. Registration Nos. 2,902,927 and 4,991,284).

50. Defendants have infringed the ELDER PANTHERS Mark, including by including the word "Panthers" on the Infringing Merchandise, used in commerce, and presented in conjunction with a plethora of other Elder iconography falsely indicating an association with Elder.

51. Because of Defendants' conduct, there is a strong likelihood of consumer confusion as to the source of the parties' respective goods or services.

52. Defendant's infringement, at least as of June 8, 2026, has been willful.

53. Defendants' conduct, as described above was done with full knowledge of Elder's prior rights in the ELDER PANTHERS Mark and with the willful intent to cause confusion and to trade on Elder's goodwill.

54. Defendants' infringement has caused and, unless enjoined, will continue to cause Plaintiff irreparable harm and damages.

**COUNT II**
**Federal Trade Dress Infringement**
**(15 U.S.C. § 1125)**

55. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs.

56. Defendants' conduct as described herein constitutes trade dress infringement.

57. The Elder Trade Dress is non-functional.

58. The Elder Trade Dress is distinctive, and has acquired secondary meaning among the relevant consuming public, who have come to associate it with Elder as the source of goods and services bearing it.

59. Defendants have infringed the Elder Trade Dress, including by using the Elder Trade Dress and/or designs and iconography confusingly similar thereto, on the Infringing Merchandise, used in commerce.

60. Because of Defendants' conduct, there is a strong likelihood of consumer confusion as to the source of the parties' respective goods or services.

61. Defendants' infringement, at least as of June 8, 2026, has been willful.

62. Defendants' conduct, as described above was done with full knowledge of Elder's prior rights in the Elder Trade Dress and with the willful intent to cause confusion and to trade on Elder's goodwill.

63. Defendants' infringement has caused and, unless enjoined, will continue to cause Plaintiff irreparable harm and damages.

**COUNT III**
**Federal Unfair Competition & False Designation of Origin**
**(15 U.S.C. § 1125)**

64. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs.

65. Defendants' conduct as described herein constitutes unfair competition and false designation of origin.

66. Defendants' unauthorized use in commerce of the Elder Trade Dress, The PIT Mark, and the ELDER PANTHERS Mark on the Infringing Merchandise, and Defendants' representations that the Infringing Merchandise was approved by Elder or that its sale benefitted Elder, constitute a false designation of origin and a false or misleading description and representation.

67. Because of Defendants' conduct, there is a strong likelihood of consumer confusion as to the source of the parties' respective goods or services or, at the very least, as to an affiliation, connection, sponsorship, approval or association of Defendants with Elder, and is likely to cause consumers to believe, contrary to fact, that the Infringing Merchandise is connected to Elder.

68. Defendants' conduct, at least as of June 8, 2026, has been willful.

69. Defendants' conduct, as described above was done with full knowledge of Elder's prior rights in Elder's trademark rights and the Elder Trade Dress and with the willful intent to cause confusion and to trade on Elder's goodwill.

70. Defendants' infringement has caused and, unless enjoined, will continue to cause Plaintiff irreparable harm and damages.

**COUNT IV**
**Ohio Deceptive Trade Practices Act Violation**
**(Ohio R.C. § 4165.02)**

71. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs

72. Defendants' conduct as described herein constitutes deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act, Ohio R.C. § 4165.02.

73. Defendants have acted willfully, and Defendants have continued their conduct after Elder's reasonable objections, rendering this a case in which injunctive relief, attorney's fees, and costs are warranted under Ohio Rev. Code § 4165.03.

74. By using The PIT Mark, The ELDER PANTHERS Mark, and the Elder Trade Dress on the Infringing Merchandise and by representing that the Infringing Merchandise is approved by or benefits Elder, Defendants have, in the course of their business, caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Infringing Merchandise, and as to Defendants' non-existent affiliation, connection, or association with Elder.

75. Defendants' conduct has caused and is causing immediate and irreparable harm and injury to Elder, and to its goodwill and reputation, for which Elder has no adequate remedy at law.

**COUNT V**
**Unfair Competition**
**(Ohio Common Law Unfair Competition)**

76. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs.

77. Defendants' unauthorized use of The PIT Mark, The ELDER PANTHERS Mark, and the Elder Trade Dress, and their false representations that the Infringing Merchandise is

approved by or benefits Elder, are likely to cause confusion as to the source, sponsorship, or approval of the Infringing Merchandise, and constitute unfair competition under the common law of the State of Ohio.

78. Defendants' conduct has caused and is causing immediate and irreparable harm and injury to Elder, and to its goodwill and reputation, for which Elder has no adequate remedy at law, and entitles Elder to injunctive relief and damages, including, in light of Defendants' willful and deliberate conduct, punitive and exemplary damages.

**COUNT VI**
**Injunctive Relief**

79. Elder hereby realleges and incorporates by reference all of the allegations stated in the preceding paragraphs.

80. Based upon the foregoing, Elder is entitled to injunctive relief stopping Defendant from further infringement and confusing consumers.

81. Elder is highly likely to prevail on the merits of the preceding claims.

82. Elder has suffered and will continue to suffer irreparable harm from Defendants' ongoing and threatened infringement of Elder's intellectual property rights.

83. Monetary damages alone are inadequate to remedy injury to Elder's goodwill and reputation.

84. The equities favor injunctive relief, at least because Defendants' conduct has bee willful and Defendants have misrepresented material facts during discussions about a resolution of the parties' dispute.

85. The public interest favors an injunction against consumer confusion arising from Defendants' unlawful conduct.

86. Elder seeks injunctive relief enjoining Defendants, and all persons acting in concert with them, from continuing to infringe Elder's intellectual property rights and engage in unfair competitive practice, pending final adjudication on the merits and thereafter.

## PRAYER FOR RELIEF

WHEREFORE, having set forth its claims against the Defendants, Elder demands judgment in its favor against the Defendants granting the following relief:

1. That Defendants have violated 15 U.S.C. § 1114.

2. That Defendants have violated 15 U.S.C. § 1125.

3. That Defendants have engaged in deceptive trade practices in violation of Ohio R.C. § 4165.02 and unfair competition in violation of the common law of the State of Ohio.

4. Granting an injunction enjoining Defendants, their employees, agents, attorneys, successors, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

   a. manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote any apparel or merchandise bearing the PIT Mark, the ELDER PANTHERS Mark, the Elder Trade Dress or any other designation that is a copy, simulation, confusingly similar variation, or colorable imitation of the Elder Trade Dress, including the Infringing Merchandise;

   b. engaging in any activity that infringes Elder's rights in the PIT Mark, the ELDER PANTHERS Mark, or the Elder Trade Dress;

   c. engaging in any activity constituting unfair competition with Elder;

   d. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that the Infringing Merchandise, or any other goods of Defendants', is in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Elder, or that proceeds from its sale benefit Elder;

e. using or authorizing any third party to use, in connection with any business, goods, or services, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods, or services with Elder or tend to do so;

f. registering or applying to register any trademark, service mark, trade name, or other source identifier consisting of or incorporating the PIT Mark, the ELDER PANTHERS Mark, the Elder Trade Dress or any other designation that infringes or is likely to be confused with the PIT Mark, the ELDER PANTHERS Mark, the Elder Trade Dress; and

g. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

5. Ordering Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and use of any and all apparel, merchandise, packaging, advertisements, signs, displays, and other materials that feature or bear the ELDER PANTHERS Mark, The PIT Mark, and/or the Elder Trade Dress or any other designation that is a copy, simulation, confusingly similar variation, or colorable imitation of the same, including the Infringing Merchandise, and to direct all distributors, retailers, and other individuals and establishments that distribute, advertise, promote, sell, or offer for sale such materials to cease forthwith and to remove them from public access and view.

6. Ordering that Defendants recall and deliver up for destruction all goods, packaging, advertisements, promotional materials, signs, displays, artwork, stencils, and related materials incorporating or bearing the PIT Mark, the ELDER PANTHERS Mark, the Elder Trade Dress or any other designation that is a copy, confusingly similar variation, or colorable imitation of the same, including but not limited to the Infringing Merchandise.

7. Ordering Defendants to formally abandon with prejudice application U.S. Serial No. 99,841,398 for the word mark PIT HAPPENS, and any and all other applications to register

any mark consisting of, incorporating, or containing The PIT Mark, The ELDER PANTHERS Mark, and/or Elder Trade Dress or any designation that falsely suggests a connection with Elder, on any trademark registry.

8. Ordering, pursuant to 15 U.S.C. § 1116(a), that Defendants file with the Court and serve upon Elder's counsel within thirty (30) days after service of an injunction in this action a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

9. Awarding Elder its damages, together with an amount up to three times such actual damages, in accordance with 15 U.S.C. § 1117(a).

10. Ordering that Defendants account for and pay over to Elder all profits realized by their wrongful acts in accordance with 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Elder for the damages caused thereby.

11. Awarding Elder punitive and exemplary damages under Ohio law as the Court finds appropriate to deter any future willful misconduct.

12. Declaring that this is an exceptional case pursuant to 15 U.S.C. § 1117(a) and awarding Elder its costs and reasonable attorney's fees, together with any attorney's fees and costs available under Ohio R.C. § 4165.03.

13. Awarding Elder interest, including prejudgment and post-judgment interest, on the foregoing awards.

14. Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Joseph J. Beglane*
Joseph J. Beglane (Ohio Bar No.: 0103193)*
BRICKER GRAYDON WYATT LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 621-6464
(513) 651-3836 (facsimile)
jbeglane@bricker.com
*Counsel for Plaintiff*
* Trial Attorney

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

*/s/ Joseph J. Beglane*
Joseph J. Beglane